IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAMES WORLEY,

       Plaintiff,

v.

MICHELLE BREWER; ELIJAH
CHAMBERS; JENNIFER EVANS; and
TILLAMOOK COUNTY, a political
subdivision of the State of
Oregon,

       Defendants.

3:16-cv-02412-BR

OPINION AND ORDER

DANIEL SNYDER
CARL POST
JOHN DAVID BURGESS
Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617

      Attorneys for Plaintiff

ELLEN F. ROSENBLUM
Attorney General
STEVEN M. LIPPOLD
Chief Trial Counsel
SHARIA MAYFIELD
CRAIG M. JOHNSON
Assistant Attorneys General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

      Attorneys for Defendants Brewer, Chambers, and Evans


BROWN, Judge.

    This matter comes before the Court on the Motion (#30) to

Dismiss filed by Defendants Michelle Brewer, Elijah Chambers, and Jennifer Evans.[1]

For the reasons below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion.

**BACKGROUND**

I.   <u>Factual Background</u>

The following summary of facts is taken from Plaintiff James Worley's Complaint and construed in the light most favorable to Plaintiff for purposes of this Motion.

In 2000 Plaintiff married Heather Laughlin. Laughlin had a minor daughter, HL, from a prior marriage to Kenneth Cole. In January 2002 Plaintiff and Laughlin had a son, SW, who lived with Plaintiff and Laughlin in Deschutes County, Oregon.

In 2003 Laughlin filed a separation action against Plaintiff in Deschutes County. In September 2006 Laughlin filed a divorce action against Plaintiff in Lane County, Oregon. On September 19, 2006, the Lane County Circuit Court entered a Judgment of Dissolution dissolving the marriage of Plaintiff and Laughlin. Following the divorce, Plaintiff's minor son, SW, lived in Lane County with Laughlin and her daughter HL. Plaintiff had regular visitation with SW and HL.

In March 2008 Plaintiff married Joanne Davis. Davis had a minor daughter, AD, from a prior marriage. Plaintiff and Davis

---

[1] On April 24, 2017, Plaintiff dismissed Defendant Tillamook County.

have two children together:  a son, JW, and a daughter, JW.
Shortly after Plaintiff's marriage to Davis, HL told Davis that
Plaintiff was having an affair with another woman.

In 2009 HL began seeing a psychotherapist and was treated
for about three years.  During that time HL did not make any
claims that Plaintiff had sexually abused her.

In February 2012 Plaintiff and his family moved to Gresham,
Oregon.  At that time SW, Plaintiff's son by Laughlin who was
living with Laughlin and HL in Lane County, told Plaintiff he
wanted to live with Plaintiff and Davis.  When HL learned SW
would possibly move, HL became upset and stopped visiting
Plaintiff.  HL did not have any further contact with Plaintiff
after February 12, 2012.

On July 12, 2012, HL told Laughlin, her mother, and Cole,
her biological father, that Plaintiff had sexually abused her.

On July 19, 2012, Laughlin took HL to the Oregon State
Police (OSP) in Lane County and spoke with Defendant Elijah
Chambers, a detective.  Detective Chambers interviewed HL and
Laughlin and directed them to go to "Kids FIRST," a child-abuse
assessment center, for evaluation.  Detective Chambers also
requested a medical examination of HL.

During the interview at Kids FIRST HL stated Plaintiff had
intimately kissed her and touched her breast and vaginal area
through her clothing.  That same day Defendant Jennifer Evans, a
caseworker with Oregon Department of Human Service (DHS) in
Gresham, Oregon, began an investigation regarding the safety of

Plaintiff's three children (SW, JW, and JW) who were then living with Plaintiff and Davis in Gresham.  Evans, accompanied by Gresham police officers, went to Plaintiff's home in Gresham, informed Plaintiff of HL's allegations, and required Plaintiff to move out of the house.  Evans prohibited Plaintiff from having unsupervised contact with his children.

On July 20, 2012, Evans called Davis and told her that Evans had seen a video on the internet of Plaintiff kissing Davis's daughter, AD, on the lips and putting his hand on her thigh. Evans also stated Davis's daughter had told Evans that Plaintiff put his hand on her thigh.  Later AD denied making that statement to Evans.

On July 24, 2012, HL had a medical examination and again stated Plaintiff had touched her on the outside of her clothing. There was not any physical evidence of sexual abuse, and HL's hymeneal tissue was intact.

On September 21, 2012, Plaintiff was interviewed by Chambers and Evans.

On November 21, 2012, Plaintiff was allowed to return home.

On May 1, 2013, almost a year after HL's first abuse assessment, HL disclosed during another interview at Kids FIRST that Plaintiff "had intercourse with her over a hundred times." Detective Chambers participated in this interview.

On May 21, 2013, Evans testified in a family court hearing in Lane County that she had seen a YouTube video of Plaintiff driving his children to school unsupervised before a protective

plan was in place.

On August 20, 2013, in another family court hearing regarding Plaintiff's visitation with SW, the Lane County court concluded there was not any evidence of abuse and that Plaintiff could have contact with SW.  HL was apparently upset about the court's decision.

On August 25, 2013, Plaintiff went to pick up SW for a planned family vacation, and SW refused to go with Plaintiff.

On December 11, 2013, Plaintiff received a letter from DHS restricting him from visiting SW at Laughlin's home in Eugene, Oregon, and advising Plaintiff that he could only have limited contact with SW.

On June 27, 2014, Laughlin took HL and SW to Kids FIRST for interviews.  This was SW's first interview at Kids FIRST. Although Detective Chambers was present, he did not participate in the interviews.  HL and SW disclosed they had seen Plaintiff having sex with an adult female in their presence.  Neither Detective Chambers nor Defendant Michelle Brewer, another detective with OSP, investigated this claim.

On October 27, 2014, HL and SW had another interview with Kids FIRST.  Detective Chambers again attended this interview. HL merely disclosed, based on dreams and flashbacks of memories, that everywhere they had lived Plaintiff had abused her, which allegedly included assault and painful sexual penetration.

On December 17, 2014, Plaintiff was indicted by a grand jury in Deschutes County on numerous counts of felony rape and sex

abuse based on the statements of HL and SW.  On December 30, 2014, Plaintiff was arrested at his home in Gresham pursuant to an arrest warrant issued in the Deschutes County case.

On January 23, 2015, Plaintiff was released from jail after posting bond, but he was monitored while on release.

On April 17, 2015, Plaintiff was charged with additional sex-abuse charges in Tillamook County.  On April 20, 2015, he was again arrested at his home in Gresham.  Plaintiff remained in custody on these charges until trial.

On February 1, 2016, Plaintiff's criminal trial began in Tillamook County.  Both HL and SW testified.  During the trial Evans testified about the video that she had seen on the internet in July 2012 depicting Plaintiff kissing AD, Davis's daughter, and putting his hand on her thigh.  Plaintiff contends this testimony and Evan's prior statements about the video were false.

On March 7, 2016, the jury found Plaintiff was not guilty of five of the charges.  Plaintiff was released from custody, but he remained on house arrest until the Tillamook County District Attorney dismissed the remaining charges.

On March 24, 2016, Evans told Plaintiff that she received a call on their "hotline" that Plaintiff was back home and that his children were in danger.  Plaintiff alleges Evans knew the children were temporarily staying at another location and spoke to Plaintiff's attorney about the safety of the children.  On March 25, 2016, Evans submitted an affidavit to the Multnomah County Juvenile Court in support of her request for a warrant to

remove Plaintiff's minor children from the home.  Evans stated in her affidavit that she did not know where the children were and that Plaintiff was not being cooperative.  Plaintiff contends Evan's representations in the affidavit were knowingly false and resulted in the permanent relocation of Plaintiff's children.

On May 27, 2016, the Deschutes County District Attorney obtained a warrant for Plaintiff's arrest for allegedly violating the terms of his release agreement.  Plaintiff surrendered and was held in custody until June 9, 2016.  After his release Plaintiff remained on house arrest until April 2017.[2]

## II.  <u>Procedural Background</u>

On December 30, 2016, Plaintiff filed his Complaint (#1) in this Court in which he brings the following claims under 42 U.S.C. § 1983 against Defendants:  (1) violation of Plaintiff's Fourteenth Amendment rights to procedural and substantive due process, (2) violation of Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, (3) and "broad-based conspiracy" to violate Plaintiff's civil rights.  Plaintiff also brings state-law claims against Defendants for false arrest, malicious prosecution, and negligence.

Defendants move to dismiss each of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to plead facts sufficient to support

---

[2] Plaintiff does not allege any resolution of the Deschutes County case.

his claims, and, in any event, Defendants are entitled to qualified immunity.

In his Response to Defendants' Motion Plaintiff concedes his First Claim states only a substantive due-process, malicious-prosecution claim and does not include a procedural due-process claim. In his Response Plaintiff also dismisses his Third Claim for conspiracy and Sixth Claim for negligence. Plaintiff otherwise opposes Defendants' Motion to Dismiss.[3]


## **STANDARDS**

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546). When a complaint is based on facts that are "merely consistent with" a

---

[2] Plaintiff also contends Defendants failed to meaningfully confer before filing their Motion. The Court has reviewed the submissions of the parties in this regard and concludes Defendants made a sufficient effort to comply with the requirements of LR 7-1 in good faith.

defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Federal Rule of Civil Procedure 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its

authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP,
Inc.,* 146 F.3d 699,706 (9th Cir. 1998), *superseded by statute on
other grounds as stated in Abrego v. Dow Chem. Co.,* 443 F.3d 676
(9th Cir. 2006)).


## **DISCUSSION**

As noted, Defendants move to dismiss each of Plaintiff's
claims for failure to state a claim pursuant to Rule 12(b)(6).


## I. **Section 1983**

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress.

To establish a claim under § 1983, a plaintiff must allege
and prove (1) the conduct complained of was committed by a person
acting "under color of state law" and (2) the conduct deprived
the plaintiff of a constitutional right. *Long v. Cnty. of L.A.,*
442 F.3d 1178, 1185 (9th Cir. 2006)(citing *West v. Atkins*, 487
U.S. 42, 48 (1988)).  In order to be individually liable under
§ 1983, an individual must personally participate in an alleged
rights deprivation. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir.
2010).  In addition, the plaintiff "must also demonstrate that

the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008).

## II. Plaintiff's Claim under § 1983 for Violation of Substantive Due Process

In his First Claim under § 1983 Plaintiff alleges Defendants violated his Fourteenth Amendment substantive due-process rights by actions that led to multiple criminal and civil actions against Plaintiff.

Defendants, however, contend Plaintiff fails to allege facts sufficient to support the substantive due-process violation in his First Claim, and, in any event, such a claim against Defendants is barred by qualified immunity.

In response Plaintiff contends he has sufficiently stated a substantive due process claim for malicious prosecution and Defendants are not entitled to qualified immunity.

### A. Substantive Due Process Violation: Malicious Prosecution

The Ninth Circuit has held that "malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to denial of constitutional rights is cognizable under § 1983." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004).

Claims alleging violations of substantive due process generally challenge allegedly "arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to

implement them.'" *Hess v. Bd. of Parole and Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008)(quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). *See also Arguijo* v. *Dennis,* No. 07-CV-1908-BR, 2009 WL 393957, at *3 (D. Or. Feb. 2, 2009)(same).

In *Freeman v. City of Santa Ana* the Ninth Circuit explained malicious prosecution pursuant to § 1983 as follows:

> Malicious prosecution, by itself, does not constitute a due process violation; to prevail [the plaintiff] must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right. *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985)(*en banc*); *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981).

68 F.3d 1180, 1189 (9th Cir. 1995). A claim of malicious prosecution under § 1983 consists of two sub-parts: a state-law malicious prosecution claim and the intent by the defendants to deprive the plaintiff of a constitutional right. *Mata-Gonzalez v. Monico*, No. 3:11-cv-00260, 2013 WL 5476952, at *8 (D. Or., Sep. 27, 2013).

In Oregon the elements of a malicious-prosecution claim are: (1) the institution or continuation of criminal proceedings, (2) by or at the insistence of the defendant, (3) termination of such proceedings in the plaintiff's favor, (4) malice, (5) lack of probable cause for the proceedings, and (6) injury or damages as a result. *Miller v. Columbia County,*

282 Or. App. 348, 360 (2016).

The decision to pursue a criminal action is generally made based on an independent determination by a prosecutor, and thus precludes liability for those who participated in the investigation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007)(citing *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981). The presumption of prosecutorial independence, however, does not bar a subsequent § 1983 claim against those who knowingly provided misinformation, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings. *Awabdy*, 368 F.3d at 1067.

Defendants contend Plaintiff's factual allegations that Defendants refused to address medical evidence, failed to investigate inconsistencies and exculpatory evidence, failed to disclose exculpatory evidence, failed to provide requested information, arbitrarily incarcerated Plaintiff, and lied regarding the existence of evidence are insufficient on their face to support a § 1983 claim for violation of substantive due process.

Plaintiff, in turn, contends his factual allegations establish the absences of probable cause to support Defendants' action because the information Defendants relied on was contradicted by prior testimony, fabricated by the alleged victims or state police, or physically impossible and, therefore,

the information was unreliable and Defendants's reliance thereon, in turn, constitutes malice. Specifically, Plaintiff alleges in his Complaint that the wrongful and improper actions of Defendants during their investigations led to the filing of criminal proceedings against Plaintiff in Deschutes County in December 2014 and in Tillamook County in April 2015. Plaintiff alleges Defendants failed to act properly during their investigations, and Plaintiff alleges Evans lied in her testimony during the Tillamook County criminal trial. To further support his position, Plaintiff points out that he was found not guilty following a jury trial in the Tillamook County case in March 2016.[4] Thus, Plaintiff argues there was not probable cause for the criminal charges or any of the proceedings against him, and, as a result, he suffered injury and damages from Defendants' violation of his substantive due-process rights.

In *Deveraux v. Abbey* the Ninth Circuit found "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." 263 F.3d 1070, 1074-75 (9th Cir. 2001). The court noted:

> We are also persuaded, however, that there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the

---

[2] Plaintiff does not allege any resolution of the Deschutes County case.

14 – ORDER

> investigation carried out in a particular way.
> . . . Consequently, mere allegations that
> Defendants used interviewing techniques that were
> in some sense improper, or that violated state
> regulations, without more, cannot serve as the
> basis for a claim under § 1983.

263 F.3d at 1075.

With the exception of Plaintiff's allegation that Evans lied during the course of his criminal trial in Tillamook County, Plaintiff does not allege Defendants fabricated any evidence that led to the criminal charges against him.  Instead, Plaintiff's allegations primarily relate to the way in which Defendants conducted their investigation, including the interviews of alleged victims.  For example, Plaintiff asserts Detectives Brewer and Chambers failed to use a narrative approach when interviewing HL and SW, failed to pose questions that explored alternative theories as required by published guidelines for abuse investigations, failed to consider "self-evident legitimacy of theories" regarding the influence of Laughlin on the minor victims, did not ask certain questions or explore alternative theories regarding the alleged victims' claims, and engaged in a host of other failures and shortcoming during the investigation.

On this record the Court concludes Plaintiff has stated a substantive due-process claim as to Evans based on Plaintiff's allegations of Evans's false testimony, but Plaintiff has otherwise failed to state a claim against Detectives Brewer and Chambers that is plausible on its face.  Accordingly, the Court

grants Defendants' Motion to Dismiss Plaintiff's First Claim only as to Detectives Brewer and Chambers and denies Defendants' Motion as to Evans based on her allegedly false testimony.

**B.    Qualified Immunity**

Qualified immunity shields defendants from liability under § 1983 "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Deveraux,* 263 F.3d at 1074 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set out a two-step analysis for determining whether a defendant is protected by qualified immunity.  First, the court must determine whether, '[t]aken in the light most favorable to the party asserting injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, the court must determine "whether [that] right is clearly established" to the degree that "it would be clear to a reasonable officer that his conduct was unlawful." *Id.* at 202. In *Pearson v. Callahan* the Supreme Court held the sequence of steps in *Saucier* "should not be regarded as mandatory." 555 U. S. 223, 236 (2009).

Here Plaintiff alleges Evans lied during the course of Plaintiff's criminal trial in Tillamook County regarding the existence of certain evidence.  In *Devereaux* the court concluded a person has a "clearly established constitutional due process right not to be subjected to criminal charges on the basis of

false evidence that was deliberately fabricated by the government."  263 F.3d at 1074–75.

Thus, on the basis of *Devereaux, Saucier*, and *Pearson*, Plaintiff has established a *prima facie* case that Evans violated Plaintiff's constitutional right to due process and that Evans should have known her conduct was unlawful.

Accordingly, for purposes of this Motion to Dismiss, the Court concludes qualified immunity does not preclude Plaintiff from bringing a § 1983 claim for malicious prosecution against Evans based on her allegedly false testimony.

### III. **Plaintiff's Claim for Unreasonable Search and Seizure under the Fourth Amendment**

In his Second Claim pursuant to § 1983 Plaintiff alleges Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.  Plaintiff contends his multiple arrests and imprisonments were based on information that Defendants knew or should have known was false.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. Amend. IV.  "[A]n arrest is lawful . . . only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense."  *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012)(citation and quotation marks omitted).  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed

by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Whether probable cause exists depends 'on the totality of facts [.]'" *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016)(quoting *Lopez*, 482 F.3d at 1073). Although probable cause does not mean law-enforcement officers must support the seizure of an individual with "certainty or even a preponderance of the evidence," officers must be able to conclude there is a "fair probability" that the individual committed a crime (*United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006)) and those officers "may not disregard facts tending to dissipate probable cause" (*Sialoi*, 823 F.3d at 1232). Finally, although law-enforcement officers do not need "conclusive evidence of guilt" to have probable cause to seize an individual, "mere suspicion, common rumor, or even strong reason to suspect" that a plaintiff engaged in criminal conduct is not enough to establish probable cause. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009)(citation and quotation marks omitted). *See also Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)(citation and quotation marks omitted).

Defendants move to dismiss Plaintiff's Second Claim on the grounds that they were not directly responsible for Plaintiff's arrests because they did not arrest Plaintiff. In any event, Defendants assert they acted with probable cause. Defendants, therefore, contend the Court must make the threshold determination whether there was probable cause to arrest

Plaintiff as a matter of law. Plaintiff did not respond to this part of Defendants' Motion.

Defendants rely on *Miller v. Columbia County*, 282 Or. App. 348 (2016) to support their position. In *Miller* the plaintiff was arrested by a sheriff's deputy for menacing and pointing a gun at another person following a 9-1-1 call from a neighbor who reported the plaintiff had threatened him. The plaintiff brought a civil action for malicious prosecution and false arrest after the state decided not to pursue the criminal charges. At the civil trial the plaintiff's theory was that the deputy had a duty to investigate whether she acted in self-defense before arresting her. According to the plaintiff, if the deputy had properly investigated the incident, he would have determined the plaintiff had not committed any crime and, therefore, her arrest was not lawful. The Oregon Court of Appeals noted it was the trial court's duty to determine as a matter of law whether the deputy had probable cause to arrest the plaintiff and whether the deputy had a duty to investigate further to rule out all defenses. *Id. at 355-56.* The court concluded:

> An officer is not required – through further investigation or otherwise – to eliminate all possible lawful explanations for conduct that reasonably appears to violate the law.

*Id.* at 358 (citations omitted).

Here Plaintiff makes a similar argument. Plaintiff contends he was arrested based on information provided by the alleged victims that Defendants "knew or should have known was false based on reasonable investigation and further consideration." As

19 – ORDER

noted by the *Miller* court, however, Defendants are not required to eliminate all possible lawful explanations for Plaintiff's alleged conduct with regard to the child victims.  Based on the information that Defendants had received as alleged in the Complaint, the Court concludes it was reasonable for Defendants to conclude that Plaintiff had violated the law.

On this record the Court concludes there was probable cause to arrest Plaintiff and to conduct any related search and seizure of Plaintiff.  Consequently, the Court also concludes Plaintiff has failed to state a claim that is plausible on its face.  Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Second Claim for unreasonable search and seizure under the Fourth Amendment.

## IV. <u>Plaintiff's Claim for False Arrest</u>

In his Fourth Claim Plaintiff alleges Detectives Brewer and Chambers falsely arrested him.

A false-arrest claim requires proof of the following four elements:  (1) the defendant confined the plaintiff, (2) the confinement was intentional, (3) the plaintiff was aware of the confinement, and (4) the confinement was unlawful.  *Hiber v. Cred. Collection Svcs.*, 154 Or. App. 408, 413, *rev. denied*, 327 Or. 621 (1998).  Principles of joint liability apply to the issuance of an arrest warrant only if the party seeking the warrant acts in bad faith, intentionally misrepresents facts to a judge, or otherwise acts with malice.  *Id.* at 410.

Detectives Brewer and Chambers again contend they did not

arrest or confine Plaintiff and, in any event, there was probable cause to arrest Plaintiff.

Plaintiff, however, contends probable cause did not exist for Plaintiff's arrest, Detectives Brewer and Chambers are liable for the false arrest, and Plaintiff should have the opportunity to conduct discovery on the probable-cause issue.

Plaintiff alleges in his Complaint that Gresham police officers arrested him on December 30, 2014, pursuant to a Deschutes County arrest warrant; Gresham police officers also arrested him on April 20, 2015, pursuant to a Tillamook County arrest warrant; and Plaintiff voluntarily surrendered on May 27, 2016, on an arrest warrant issued from Deschutes County for allegedly violating his release agreement. Although Plaintiff alleges Detectives Brewer and Chambers caused him to be arrested and jailed, Plaintiff does not allege any facts that show Detectives Brewer or Chambers were personally involved in the initiation or execution of these warrants, that they intentionally confined him, nor that they intentionally acted in bad faith or with malice.

As noted, the Court has concluded Plaintiff's allegations that Detectives Brewer and Chambers failed to conduct their investigation properly are insufficient to constitute an allegation of deliberate fabrication of evidence; there is evidence to support a finding of probable cause that Plaintiff had violated the law; and, therefore, the arrests were lawful in any event.

On this record the Court concludes Plaintiff has failed to state a claim plausible on its face that Detectives Brewer and Chambers falsely arrested him.  Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fourth Claim for false arrest.

**V.  Plaintiff's Claim for Malicious Prosecution under State Law**

In his Fifth Claim Plaintiff alleges Detectives Brewer and Chambers initiated and pursued a criminal prosecution against Plaintiff with malice and without probable cause.

As noted, in Oregon the elements of a malicious prosecution claim are:  (1) the institution or continuation of criminal proceedings, (2) by or at the insistence of the defendant, (3) termination of such proceedings in the plaintiff's favor, (4) malice, (5) lack of probable cause for the proceedings, and (6) injury or damages as a result.  *Miller* at 360.  The existence of probable cause is an absolute defense to malicious prosecution.  *Lassiter v. City of Bremerton*, 556 F.3d 1049, 154-55 (9th Cir. 2009).

As noted, the decision to pursue a criminal action is generally made based on an independent determination by a prosecutor, and thus precludes liability for those who participated in the investigation.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007)(citing *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981).  The presumption of prosecutorial independence, however, does not bar a subsequent

§ 1983 claim against those who knowingly provided misinformation, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings. *Awabdy*, 368 F.3d at 1067.

Here Plaintiff alleges the wrongful and improper actions of Defendants during their investigation led to the filing of criminal proceedings against him in Deschutes County in December 2014 and Tillamook County in April 2015. Plaintiff points out in March 2016 that he was found not guilty of some charges following a jury trial in the Tillamook County case. Plaintiff also alleges Defendants acted with malice by failing to act properly during their investigations; they did not have probable cause to support the criminal charges or any of the proceedings against him; and, as a result, Plaintiff suffered injury and damages.

The Court, however, has previously concluded Defendants had probable cause to arrest Plaintiff. Thus, on this record the Court concludes Plaintiff has failed to state a claim for malicious prosecution under state law that is plausible on its face. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Fifth Claim for malicious prosecution.

In summary, Plaintiff concedes his First Claim states only a substantive due-process claim and does not include a procedural due-process claim. Plaintiff also voluntarily dismisses his Third Claim for conspiracy and Sixth Claim for negligence. As to Plaintiff's remaining claims, the Court concludes as follows:

Plaintiff's First Claim pursuant to § 1983 for violation of his substantive due process rights under the Fourteenth Amendment adequately states a claim as to Defendant Evans only based on her allegedly false testimony and is not barred by qualified immunity and Plaintiff's Second, Fourth, and Fifth Claims fail to state claims that are plausible on their face based on the determination that probable cause existed for Plaintiff's arrest and prosecution.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion (#30) to Dismiss as follows:

1.    The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's First Claim under § 1983 to the extent that Plaintiff alleges a violation of his Fourteenth Amendment substantive due-process rights as to Defendants Brewer and Chambers only and **DISMISSES with prejudice** that part of Plaintiff's First Claim;

2.    The Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's First Claim under § 1983 to the extent that Plaintiff alleges a violation of his Fourteenth Amendment substantive due-process rights as to Defendant Evans based on her allegedly false testimony;

3.    The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Second Claim under § 1983 for unreasonable search and seizure in violation of his Fourth Amendment rights and **DISMISSES**

Plaintiff's Second Claim **with prejudice** as to all Defendants;

    4.    The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Third Claim for conspiracy and **DISMISSES** Plaintiff's Third Claim **with prejudice** as to all Defendants;

    5.    The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Fourth Claim for false arrest and **DISMISSES** Plaintiff's Fourth Claim **with prejudice** as to all Defendants;

    6.    The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Fifth Claim for malicious prosecution and **DISMISSES** Plaintiff's Fifth Claim **with prejudice** as to all Defendants; and

    7.    The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Sixth Claim for negligence and **DISMISSES** Plaintiff's Sixth Claim **with prejudice** as to all Defendants.


    All case-management deadlines previously set remain in effect.

    IT IS SO ORDERED.

    DATED this 5th day of July, 2017.

                    /s/ Anna J. Brown
                    _____
                    ANNA J.  BROWN
                    United States District Judge